Gholson, J.
delivered the opinion of the majority of the court.—We are of opinion that William Lea possessed a sufficient freehold qualification to constitute him a good grand juror. It was clearly not necessary to his competency that the legal title to the house and lot should have been in him. Cesluis que use of freehold estates are good jurors in England. Co. Lilt. 272 b. Mortgagors, or grantors in deeds of trust made to secure debts, while in possession and entitled to the equity *828 of redemption, are good jurors in Virginia. Carter's case, 2 Va. Cas. 319. Moore's case, 9 Leigh 639. It seems sufficient if the juror is in the possession of a freehold estate, and “is enjoying the profits and the substantial ownership thereof.” Lea was the tenant of the freehold in the house and lot; be was not only receiving the profits of it, but was so enjoying the possession as that no one could oust him from it. He was nowise in default; he was in the lawful possession; and a court of equity would have kept him there against the world. Should he even hereafter fail to pay the deferred instalments of the purchase money, a court of equity would not allow him to be disseized or evicted. It would regard the house and lot as his property: in the event of his failing to pay the purchase money within a limited time, it would direct the property to be sold as his, and not as Grammar's: if the amount of the sale exceeded the balance due on the purchase, the excess would be decreed to him. Grammar never can hereafter be permitted to recover or reclaim the property itself. If it were conceded that the legal title is still in him, a court of equity would yet regard him as holding it in trust for Lea. But the legal title is not in fact outstanding in him; he has so far parted with it that he can in no way recall it, while the mere act of paying the residue of the purchase money devolves it on Lea fully and unconditionally. In Carter's case and Moore's case, above referred to, this court decided that though a person had conveyed his land by deed of trust to secure the payment of debts, and though the debts were due, ánd the time had passed when the trustee was authorized to sell, yet if the grantor retained the possession and equity of redemption, he was a freeholder qualified to serve as a grand juror. This case is stronger than those, inasmuch as Lea is not only in possession of the land and enjoying its profits, but he is in no default, and no one can sell the land or in *829 any wise dispossess him. His right may be likened to that of a mortgagor in possession, where the mortgagee has no right to call for a foreclosure of the equity of redemption : and that such mortgagor would be a good grand juror no one will question.
Reynolds's case, 4 Leigh 663. and Kerby's case, 7 Leigh 747. which were cited at the bar, are not regarded by this court as at all conflicting with the opinion now expressed. In the first of these cases it appeared, that Smith, the grand juror objected to, had entered into a contract in writing to sell his land, provided certain conditions precedent were complied with ; but the record did not shew that anyone of those conditions had been performed, or that one dollar of the consideration had been paid, or that any title had been made, or even that the possession of the land had passed from Smith. As presented in the record, it was the case of a mere contract, for the violation of which by either party the other would have been entitled to redress only in the form of damages. The court properly decided that the freehold remained in Smith. In Kerby's case, the grand juror was in possession of land which he had previously agreed to purchase; but before he had paid all the purchase money, a deed was tendered him which he refused as insufficient, and he thereupon instituted a suit in chancery to litigate the question of title and the rights of the parlies. This court refused to pronounce him a freeholder; not only because he had disclaimed the ownership and title to the land, but because it was deemed improper to decide in a collateral way a question which was then the subject of judicial investigation in another forum. But in that very case the court reviewed and approved the judgment rendered in Carter's case, which in our opinion is decisive of this.
We therefore advise the circuit superior court for the town of Petersburg to adjudge William, Lea a good grand juror.
*830 Duncan, J.
The question adjourned in this case involves the construction of the statute, 1 Rev. Code, ch. 75. § 1. p. 264. requiring that grand jurors shall be freeholders. The facts upon which the question adjourned is made to depend are these. A man impanneled upon the grand jury had purchased a house and lot of ground, the purchase money to be paid by instalments, and part of the purchase money wrns unpaid when he was so impanneled. He was in the possession of the lot, and his vendor had executed a deed to him for it; but, in order to secure the payment of the purchase money, the deed had been placed in the hands of a third person as an escrow, to be delivered to the vendee when the purchase money was paid. The purchase money not having been paid, the deed accordingly remained in the hands of the third person to whom it had been so delivered; and the question adjourned is, was the vendee under the foregoing circumstances a freeholder, so as to be a qualified grand juror?
The statute above cited directs that “ the sheriff shall summon 24 of the most discreet freeholders,” &c. to be a grand jury. This qualification of estate was derived from an ancient english statute, and no doubt had its origin in the idea that men having a fixed and permanent interest in the soil could be more safely entrusted with the delicate and important duty of bringing offenders against the laws to justice, and at the same time, from the independence of their condition, would afford a protection to the innocent from unjust accusations. The legislature of both countries looked to the degree and permanency of the estate, rather than the amount or value of it, as the qualification best calculated to effect the ends of public policy; and 1 imagine the framers of neither statute anticipated that a doubt could ever arise as to the definition of an estate of freehold. Doubt however seems to have arisen, if not as to what estate would constitute a freehold according to its strict *831 legal signification, yet as to what is the precise meaning of the term as employed by the statute. It is a well settled rule in the construction of statutes, that when terms having a defined common law signification are employed in a statute, that signification is intended to be adopted. We know that at the common law a freehold is an estate in lands for not less than term of life; that all estates less than that are mere chattels. We know, too, that to create by contract a freehold estate prior to the statute of uses, the feudal investiture by livery of seisin was necessary. Since the statute of uses, this investiture is by deed in writing sealed and delivered; the delivery of the deed superseding the formula of livery of seisin, in all cases where the grantor is seized and capable of making livery, as in such cases the statute annexes the possession to the use. But to create a freehold estate, there must be a union of the use with the possession; and in law there cannot be a use created, except by deed in writing sealed and delivered. This is rendered necessary by the terms of the statute itself; see 1 Rev. Code, ch. 99. § 1. p. 361. In the case under consideration, it is true that the juror had possession (which is a mere act in pais), but he had not the use; for the use he could only acquire by deed delivered. His possession, therefore, was not adverse to his vendor, but under him. But the vendor had executed a deed, and placed it in the hands of a third person as an escrow, to be delivered upon the payment of the purchase money : and it is supposed that the legal title has passed by the deed. I have before remarked (in the words of the statute) that to pass the freehold, the deed must be delivered. The delivery is the medium by which the title passes out of the bargainor to the bargainee. Without such delivery, the title remains precisely where it was, in the same manner as if there had been no deed at all; it remains in the bargainor. But it is asked, suppose the bargainor had *832 died before the time of payment bad arrived, and after his death the bargainee had paid the purchase money; could the deed then be delivered as an operative deed ? Undoubtedly it could, and the delivery would have relation to the time when it was deposited as an escrow. The deed, by such delivery, would acquire vitality which it had not before, and would operate as an estoppel to the heirs to demand the estate, in the same manr ner that it would in the case where a man sells and conveys land in the adversary possession of another. We know that in such case the deed would pass nothing, by reason of the disseisin of the bargainor; and the bargainee could not in his own name evict the disseisor. But he might do so in the name of the bargainor, or of his heirs: and if the recovery was in the name of the latter, eo instanti the deed of their ancestor, which till then was inoperative and without life, would become vivified ; it would relate back, upon the principle of remitter at the common law, and the heirs of the bargainor would be estopped by it. I refer to this doctrine to shew, that under the statute of uses no deed can pass a freehold estate until delivery; that if a deed be delivered as an escrow, and the condition be after-wards performed, the delivery will then be consummate, and take effect from the time of the delivery as an escrow, although the bargainor may have died in the mean time ; and that cases exist where a deed may be inoperative for a time, and by subsequent events become operative, and relate back to its inception. -
As a further argument to test the rule I have laid down, that delivery of a deed is indispensable under the statute of uses and conveyances, suppose the vendor in this case, after depositing the deed as an escrow, had executed a conveyance of the same lot to a third person: such last conveyance would have passed the title, and the first purchaser, although in possession (his possession not being adverse to the grantor), might *833 have been evicted in an action of ejectment by the last purchaser. And if any person claiming the lot adversely to the juror were to bring a writ of right for the recovery of the same, he would be compelled to sue the vendor, not the juror, because a writ of right can only be maintained' against the tenant of the freehold, and not against a tenant in possession having merely an equitable title.
But it is argued, that although the juror in this case may not at law be a freeholder, yet the statute will be satisfied if he have such an interest as would in equity entitle him to call for the freehold estate. This proposition, which I do not admit to be correct, may be conceded for the sake of argument; and how will the case then stand ? The juror has not paid the purchase money, and until he does so, equity cannot decree to him the legal title. He may never pay it, and upon default his vendor may enter upon the premises, and may sell and transfer the legal title to another. This juror, therefore, is in this condition : he has not the legal estate of freehold, he has no present right to resort to a court of equity to obtain the legal title, and he may never have that right; for it will depend upon his ability and his will to pay. And yet he is said to be a freeholder.
But I do not concede that any estate less than a freehold will satisfy the statute. I have adverted to the reasons which, as I supposed, induced the legislature to require the certain and permanent estate of freehold as a qualification for a grand juror; and it will be found that the same qualification has been also deemed important in reference to another description of jurors. In fixing the qualification of petit jurors for the trial of pleas of the commonwealth and for the trial of all causes in the superior courts, the statute requires that they shall be freeholders, and have a visible estate, real or personal, of the value of 300 dollars. *834 For a grand juror, a freehold of any value is sufficient: a petit juryman must not only be a freeholder, but possessed of a visible estate, real or personal, of the value of 300 dollars at the least. The legislature, therefore, for the purpose of protecting the rights of the public, and the safety of the persons and property of its citizens, has provided that the jurymen who present for crimes, and the jurymen who try the offenders, shall have that fixed and permanent interest in the country, which will place their independence, as far as practicable, out of the reach of power, or the influence produced by fear, favour or affection. And every citizen charged with an offence has the right to demand that the grand jury which is asked to indict him, and the petit jury which is to try him, shall be composed of men who are freeholders, and nothing less than freeholders. It is not enough for him to be told, that the juryman who is to indict or try him has contracted for the purchase of land, which he may pay for at some future time, and may possibly acquire a freehold estate in it.
If the objections to a departure from the express terms of the statute, which I have already adverted to, be regarded as insufficient, there exists one that in a practical point of view I deem conclusive; and it is this. A relaxation of the statute will involve the courts in innumerable questions of difficulty as to the qualifications of grand and petit jurymen. Adhere to the legal signification of a freehold, and all will understand it: but once adopt executory contracts for the purchase of land as a substitute for the requisitions of the statute, and what guide will be furnished to the summoning officers, or even to learned judges, by which they can determine whether the juryman'has the necessary qualification of estate or not? Will a purchaser of land in possession, with or without any agreement in writing, be considered a freeholder under the statute, *835 merely because he has made a contract of purchase and got possession under it? A writing is notin all cases indispensable for obtaining a decree in equity for the legal title to land, as we know that part performance will take a contract out of the operation of the Statute of frauds. Will it not be exceedingly inconvenient to impose upon the courts of law, in a criminal cause, a necessity to enter, in a collateral way, into the perplexing enquiries which will continually arise, whether a juryman has such a claim to land as would justify a court of equity to decree to him the legal titled Yet such seems to me the inevitable consequence of a departure from the legal import of the qualification of freehold prescribed by the statute.
Some adjudications have taken place in this country, bearing upon the question under consideration, which it may be well to notice. It is proper to premise, however, that in England during the controversy between the houses of York and Lancaster, many lands were conveyed to uses; the feoffee holding the legal estate, but the cestui que use taking the profits. In conscience, therefore, the land was his; and the english courts extended the statute of jurors, against the letter, to embrace the cestui que use; but they have never gone any farther. The effect, however, of the subsequent statute of uses being to annex the possession to the use, the cestuis que use were converted into freeholders. In this state, in Carter's case, 2 Va. Cas. 319. a juror was held to be qualified who had given a deed of trust of his land to secure a debt, but remained in possession. This was by analogy to the decision in England prior to the statute of uses, already indicated. The general court viewed the subject in the same light in which it was looked at by the english judges : they considered, that though in form the juror had conveyed the legal title, yet in fact he was the cestui que use; that the deed of trust was not evidence of a sale of the land, but *836 was a mere security, which might or might not be en-_ ,7r^7,J _ ° b torced. In Kerby's case, 7 Leigh 747. the question was raised whether a purchaser in possession, who had paid r , , ^ , . , . the purchase money and had a complete right in equity to call for the legal title, was qualified to serve as a grand juror; but a majority of the judges were of opinion that the case should be decided on other grounds. They affirmed,' however, the proposition, that it would be inconvenient in practice to impose upon the courts the necessity of deciding in criminal causes, in a collateral way, the qualification of jurors resting upon a mere equitable title. There is nothing, therefore, in the rule that prevails in England, or in the adjudications of this stale, that authorizes a mere purchaser of land, because he is in possession, to serve as a grand juror, although he has not paid the purchase money, and is not in a condition to demand in equity the title.
Estill and Brown, J. also dissented from the opinion of the majority of the court.